# EXHIBIT A

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 13

FILED
4/9/2025 12:16 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH03939
Calendar, 13
32197881

FILED DATE: 4/9/2025 12:16 PM    2025CH03939

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

Summons - Alias Summons                                    (08/01/18) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Brad Bixler,

(Name all parties)

v.

Case No. 2025CH03939

Yardi Systems, Inc.,

c/o 1505 Corporation
CSC-LAWYERS INCORPORATING SERVICE ☑ **SUMMONS** ☐ **ALIAS SUMMONS**
2710 Gateway Oaks Drive
Sacramento, CA 95833

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

Page 1 of 3

**Summons - Alias Summons**        (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 56618

Atty Name: McGuire Law, P.C.

Atty. for: Plaintiff

Address: 55 W. Wacker Dr., 9th Fl.

City: Chicago

State: IL    Zip: 60601

Telephone: (312) 893-7002

Primary Email: jfrysinger@mcgpc.com

Witness: _____

4/9/2025 12:16 PM Mariyana T. Spyropoulos

IRIS Y. MARTINEZ, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

### Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

FILED DATE: 4/9/2025 12:16 PM 2025CH03939

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 13

FILED
4/9/2025 11:40 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH03939
Calendar, 13
32196742

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| BRAD BIXLER, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff,* | ) ) | No. 2025CH03939 |
| v. | ) ) | |
| YARDI SYSTEMS, INC., a California corporation, | ) ) ) | Hon. Judge Lynn Weaver-Boyle |
| *Defendant.* | ) ) ) ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY,**
**FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY**

Plaintiff Brad Bixler ("Plaintiff"), by and through his undersigned counsel, pursuant to 735 ILCS 5/2-801, moves for entry of an order certifying the Class proposed below, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g., Ballard RN Center, Inc. v. Kohl's Pharmacy & Homecare, Inc.,* 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.,* 662 F.3d 891, 896–97 (7th Cir. 2011)). In support of his Motion, Plaintiff submits the following Memorandum of Law.

Dated: April 9, 2025

Respectfully Submitted,

BRAD BIXLER, individually and on behalf of a
Class of similarly situated individuals

By: */s/ Jordan R. Frysinger*
*One of Plaintiff's Attorneys*

1

FILED DATE: 4/9/2025 11:40 AM 2025CH03939

Eugene Y. Turin
Jordan R. Frysinger
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

2

FILED DATE: 4/9/2025 11:40 AM 2025CH03939

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION OR, ALTERNATIEY, FOR
A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY**

This Court should certify a class of individuals whose privacy rights were violated by Defendant Yardi Systems, Inc. ("Defendant") under the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA"). Defendant is the operator of a popular management and rental listing platform, rentcafe.com. Defendant's website offers virtual tours of rental properties via pre-recorded video. Defendant permits its website users to subscribe and create an account (hereinafter referred to as "Subscribers"). Critically, Defendant utilizes sophisticated tracking technology that collects its subscribers' personally identifiable information ("PII"), including information which identifies a person as having viewed specific videos on Defendant's website.

Defendant knowingly discloses this information to third party advertisers so that they can target specific users with specifically tailored advertisements based on their viewing history and their use of the website. However, Defendant discloses its subscribers' PII without their consent, in violation of the VPPA and Plaintiff's and the other Class members' statutory rights. After Plaintiff learned of Defendant's wrongful conduct, he brought suit on behalf of a class of similarly situated individuals to put a stop to Defendant's violations of the VPPA, and to obtain redress for all persons injured by its conduct.

## I. INTRODUCTION: THE VPPA

The VPPA prohibits "[a] video tape service provider" from "knowingly disclos[ing] to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting

3

FILED DATE: 4/9/2025 11:40 AM    2025CH03939

interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual material." 18 U.S.C. § 2710(a)(4). Further, the act defines a "consumer" as "any, renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710 (a)(1). In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to "so-called 'on-demand' cable services and internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. 112-259, at 2.

## II.    FACTUAL BACKGROUND

### A.    The Underlying Misconduct.

Defendant operates the popular property management and rental listing platform rentcafe.com. (Complaint, "Compl.," ¶ 15.) In addition to listing rental properties, Defendant's website offers video virtual tours. (Compl., ¶ 17.) Defendant relies on virtual tours to increase the use of its services and drive lead generation and lease signings by Subscribers. (*Id.*) As a result, Defendant is engaged in the business of the delivery of audio-visual materials to its customers who subscribe to its website. Importantly, while creating their accounts, Subscribers are not specifically asked to consent to Defendant sharing and disclosing their PII to third parties, including information which identifies them as having viewed specific video content. (*Id.* at ¶ 25.) However, despite not obtaining informed, written consent from its Subscribers which is distinct and separate from any form setting forth other legal obligations, Defendant discloses its Subscribers' PII to various third parties (*Id.* at ¶ 24.) Specifically, Defendant's website shows that Defendant discloses its Subscribers' PII by utilizing tracking pixels and similar tracking technologies such as the Meta Pixel. (*Id.* at ¶ 21.) The Meta Pixel is a piece of code that online media providers, like Defendant, can integrate into their websites that, once activated, tracks the people and the type of actions they

take on the website and disseminates that information to Facebook. (Compl., ¶ 22.) Therefore, when one of Defendant's Subscribers requests to watch a video on Defendant's Website, the Meta Pixel sends that video request, along with the Subscribers' identity in the form of a Facebook Identity ("FID"), to Facebook. (*Id.* at ¶ 22.) Critically, at no point does Defendant obtain its Subscribers', including Plaintiff's, prior written consent as required under the VPPA to share their PII and video viewing history with such third parties and its Subscribers remain unaware that their PII and other sensitive data is being disclosed and/or collected by such third parties. (*Id.* at ¶¶ 25, 26.) By disclosing its Subscribers' PII, which undeniably reveals both an individual's identity and the video materials they have requested from Defendant's services, Defendant has intentionally and knowingly violated the VPPA. (*Id.* at ¶ 27)

Plaintiff Brad Bixler is a Subscriber of Defendant's website. (*Id.* at ¶ 28.) Plaintiff has used his account with Defendant to view video materials, including prerecorded video tours, within the past year. (*Id.* at ¶ 30.) Whenever Plaintiff viewed video materials on Defendant's Website, Defendant knowingly and intentionally disclosed Plaintiff's PII, including specifically his viewing history and identity, to third parties and affiliates, including Facebook. (*Id.* at ¶ 31.) Plaintiff never specifically and separately consented, agreed, authorized, or otherwise permitted Defendant to collect his PII, including specifically information that could be used to identify him as an individual who has requested to view a specific video(s), and disclose his PII to third parties. (*Id.* at ¶ 32.) Plaintiff did not provide his informed written consent to such disclosures in a form distinct and separate from any form setting forth his other legal obligations. (*Id.*) By disclosing Plaintiff's PII, which reveals both his identity and the video materials he has requested from Defendant's services to third-parties, Defendant has intentionally and knowingly violated the VPPA and Plaintiff's privacy rights. (*Id.* at ¶ 34.)

5

**B.     The Proposed Class**

Plaintiff brings this action on behalf of himself and similarly situated individuals pursuant

to 735 ILCS § 5/2-801. Plaintiff seeks to represent a Class defined as follows:

> **Class**: All persons in the United States who, during the applicable statute of
> limitations period, subscribed to rentcafe.com and viewed video materials on the
> rentcafe.com website.

(Compl., ¶ 35.) As explained below, the proposed Class satisfies each of the four requirements

for certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity,

commonality, adequacy of representation, and fair and efficient adjudication. A class action is not

just appropriate here, it is also the only way that the members of the putative Class can obtain

appropriate redress for Defendant's unlawful conduct.

## III.     ARGUMENT

**A.     Standards for Class Certification**

To obtain class certification, it is not necessary for a plaintiff to establish that he will prevail

on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he

question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and

citation omitted)). As such, in determining whether to certify a proposed class, the Court should

accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378

Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the

maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure,

which provides:

> An action may be maintained as a class action in any court of this State and a party
> may sue or be sued as a representative party of the class only if the court finds:

6

(1)    The class is so numerous that joinder of all members is impracticable.

(2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)    The representative parties will fairly and adequately protect the interest of the class.

(4)    The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class, and the Court should therefore certify the proposed Class.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not yet had an opportunity to engage in and complete discovery. However, in the interests of establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of

supplemental briefing.

### B.     The Numerosity Requirement is Satisfied

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are at least hundreds of thousands of members of the Class. (Compl., ¶ 37.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Class can be easily and objectively determined from Defendant's records as it possesses account information for its Subscribers. Furthermore, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout the United States, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, because each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d at 200. Accordingly, the first prerequisite for class certification is met.

8

### C. Common Questions of Law and Fact Predominate

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.*, 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984). These common questions include: Whether Defendant disclosed Class members' PII; Whether the information disclosed to third parties concerning Class Members' PII constitutes personally identifiable information under the VPPA; Whether Defendant knowingly disclosed the Class Members' PII to third-parties; Whether Class members provided written informed consent to Defendant's disclosure of their PII to third parties as required by the VPPA; Whether the Class is entitled to damages and other relief as a result of Defendant's conduct. (Compl., ¶ 39.)

As alleged, and as will be shown through obtainable evidence, during the relevant time period Defendant engaged in a common course of conduct by illegally disclosing Class members' PII, without obtaining separate written consent in violation of the VPPA. Any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this hurdle to certification.

### D. Adequate Representation

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's

FILED DATE: 4/9/2025 11:40 AM 2025CH03939

interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class. Plaintiff has alleged that, like the other members of the Class, he has had his PII collected and disclosed by Defendant without his separate prior written consent in violation of the VPPA. (Compl., ¶¶ 15-27, 28-34.) Plaintiff's pursuit of this matter against Defendant demonstrates that he will be zealous advocates for the Class. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in numerous complex consumer class actions. Accordingly, the proposed class representative and proposed class counsel will adequately protect the interests of the members of the Class, thus satisfying Section 2-801(3).

## E.     Fair and Efficient Adjudication of the Controversy

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it

10

FILED DATE: 4/9/2025 11:40 AM 2025CH03939

evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of...protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at *6. This is especially true in cases involving data privacy violations and data breaches, which can involve significant injury to the those effected, but result in many small, individual claims. Here, absent a class action, most members of the Class would find the cost of litigating their statutorily-limited claims to be prohibitive, and multiple individual actions would be judicially inefficient.

Certification of the proposed Class is necessary to ensure that Defendant's conduct becomes compliant with the VPPA, to ensure that the Class members' privacy rights in their PII are sufficiently protected, and to compensate those individuals who have had their statutorily-protected privacy rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress, or that Defendant would willingly implement the procedures necessary to comply with the statute. Thus, proceeding as a class action here is an appropriate method to fairly and efficiently adjudicate the controversy.

11

## IV. CONCLUSION

For the foregoing reasons, the requirements of 735 ILCS 5/2-801 are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class, appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable. Alternatively, the Court should defer ruling on this Motion pending the completion of appropriate discovery and supplemental briefing.

Dated: April 9, 2025

Respectfully submitted,

BRAD BIXLER, individually and on behalf of a
class of similarly situated individuals

By: /s/ *Jordan R. Frysinger*
*One of Plaintiff's Attorneys*

Eugene Y. Turin
Jordan R. Frysinger
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

12

## CERTIFICATE OF FILING

The undersigned, an attorney, hereby certifies that on April 9, 2025, a copy of *Plaintiff's*

*Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending*

*Discovery* was filed electronically with the Clerk of Court using the e-filing system.

*/s/ Jordan R. Frysinger*

13

For updated information about your case, including hearings, subsequent filings and other case information, please visit our Online Case Search and search for your case: https://casesearch.cookcountyclerkofcourt.org

FILED
4/7/2025 1:33 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH03939
Calendar, 13
32158392

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

BRAD BIXLER, individually
and on behalf of a class of similarly
situated individuals,

        *Plaintiff,*

        v.

YARDI SYSTEMS, INC., a California
corporation,

        *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **2025CH03939**

Hon.

**12-Person Jury**

## CLASS ACTION COMPLAINT

Plaintiff Brad Bixler ("Plaintiff") brings this Class Action Complaint against Defendant Yardi Systems, Inc. ("Defendant") to stop Defendant's unlawful disclosure of its subscribers' personally identifiable information and to seek redress for all those who have been harmed by Defendant's misconduct. Plaintiff alleges as follows based on personal knowledge as to himself and his own acts and experiences and as to all other matters, on information and belief, including an investigation by his attorneys.

## INTRODUCTION

1. This is a class action suit brought against Defendant for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *et seq.*, which prohibits the disclosure of subscribers' video viewing history without their informed, written consent.

2. Defendant operates the popular property management and rental listing platform rentcafe.com (the "Website"). Accordingly, a key aspect of Defendant's business model is to showcase available rental properties by using videos for virtual tours.

3. Critically, Defendant utilizes sophisticated tracking technology on its Website that

1

collects its subscribers' personally identifiable information ("PII"), including information which identifies a person as having viewed specific videos on Defendant's Website. Defendant knowingly discloses this information to third party advertisers so that they can target specific users with specifically tailored advertisements based on their viewing history.

4. However, Defendant discloses its subscribers' PII without their consent, and in doing so, Defendant has violated the VPPA and Plaintiff's and the other Class members' statutory rights.

5. Accordingly, Plaintiff brings this class action for legal and equitable remedies to redress and put a stop to Defendant's practices of knowingly disclosing its subscribers' PII to third-parties in violation of the VPPA.

## JURISDICTION AND VENUE

6. This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States, because Defendant is knowingly doing business within this State such that it has sufficient minimum contacts with Illinois and has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiff's claims arise out of or relate to Defendant's conduct in Illinois, as Defendant illegally discloses the video viewing information of Plaintiff's and the other putative Class members' in this State.

7. Venue is proper in Cook County, Illinois pursuant to 735 ILCS 5/2-101 because Defendant conducts business in Cook County and thus resides there under § 2-102.

## PARTIES

8. Plaintiff Brad Bixler is a natural person and citizen of Illinois.

9. Defendant Yardi Systems, Inc. is a California corporation with its principal place

2

of business located in Santa Barbara, California.

**COMMON FACTUAL ALLEGATIONS**

**I.      The Video Privacy Protection Act**

10.     The VPPA prohibits "[a] video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

11.     The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

12.     A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual material." 18 U.S.C. § 2710(a)(4).

13.     Further, the act defines a "consumer" as "any, renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710 (a)(1).

14.     In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to providers of online video content such as Defendant. S. Rep. 112-259, at 2.

**II.     Defendant Discloses its Subscribers' PII to Third Parties**

15.     Defendant operates the popular property management and rental listing platform rentcafe.com.

16.     Defendant permits its Website users to subscribe and create an account by registering with their First Name, Last Name, Email Address, and Phone Number (hereinafter referred to as "Subscribers").

17.     A key aspect of Defendant's business model depends on attracting renters by

3

showcasing properties on its Website. Importantly, one method Defendant chooses to do this is by allowing its rental listers to offer video virtual tours. Defendant encourages the use of virtual tours stating that "virtual tours have been proven to drive 40% more leads and 72% more net leases."[1]

18.     The video tour walkthrough consists of a video presentation of the selected listing.

19.     Importantly, while creating their accounts, Subscribers are not specifically asked to consent to Defendant sharing and disclosing their PII to third parties, including information which identifies them as having viewed specific video content on Defendant's Website.

20.     However, despite not obtaining informed, written consent from its Subscribers which is distinct and separate from any form setting forth other legal obligations, Defendant discloses its Subscribers' PII to various third parties.

21.     Specifically, an analysis of Defendant's Website shows that Defendant discloses its Subscribers' PII by utilizing tracking pixels and similar tracking technologies such as the Meta Pixel.

22.     The Meta Pixel is a piece of code that online media providers, like Defendant, can integrate into their websites. Once activated, the Meta Pixel tracks the people and the type of actions they take on the website and disseminates that information to Facebook. Therefore, when one of Defendant's Subscribers requests to watch a video on Defendant's Website, the Meta Pixel sends that video request, along with the Subscribers' identity in the form of a Facebook Identity ("FID"), to Facebook.

23.     For example, if a Subscriber were to request to watch a video tour of an apartment

---

[1] https://blog.reachbyrentcafe.com/virtual-tours/

4

FILED DATE: 4/7/2025 1:33 PM 2025CH03939

listing on Defendant's Website, Defendant would disclose that information in the form of a URL request (as shown below), along with the identity of the Subscriber:



24. Thus, Defendant compiles and discloses data obtained from its Subscribers, including PII which can be used to identify a specific person as having viewed a specific video.

25. Critically, at no point does Defendant obtain its Subscribers', including Plaintiff's, prior written consent as required under the VPPA to share their PII and video viewing history with such third parties, and its Subscribers remain unaware that their PII and other sensitive data is being disclosed and/or collected by such third parties.

26. Defendant's Subscribers are unaware of the status of their PII and video viewing history, to whom it has been disclosed, and who has possession and retained such information as a result of Defendant's illegal disclosures.

5

FILED DATE: 4/7/2025 1:33 PM   2025CH03939

27.     By disclosing its Subscribers' PII, which undeniably reveals both an individual's identity and the video materials they have requested from Defendant's Website, Defendant has intentionally and knowingly violated the VPPA.

**FACTS SPECIFIC TO PLAINTIFF**

28.     At all relevant times, Plaintiff Brad Bixler was a Subscriber of Defendant's Website rentcafe.com after registering for an account.

29.     At all relevant times, Plaintiff has been a Facebook user.

30.     Plaintiff has used his account with Defendant to view video materials, including prerecorded video tours, within the past year.

31.     Whenever Plaintiff viewed video materials on Defendant's Website, Defendant knowingly and intentionally disclosed Plaintiff's PII, including specifically his video viewing history and identity, to third parties and affiliates, including Facebook.

32.     Plaintiff never specifically and separately consented, agreed, authorized, or otherwise permitted Defendant to collect his PII, including specifically information that could be used to identify him as an individual who has requested to view a specific video(s), and disclose his PII to third-parties. Plaintiff did not provide his informed written consent to such disclosures in a form distinct and separate from any form setting forth his other legal obligations.

33.     To this day, Plaintiff is unaware of the status of his PII, to whom it has been disclosed, and who has possession and retained his PII as a result of Defendant's illegal disclosures.

34.     By disclosing Plaintiff's PII, which reveals both his identity and the video materials he has requested from Defendant's Website to third-parties, Defendant has intentionally and knowingly violated the VPPA and Plaintiff's privacy rights.

## CLASS ALLEGATIONS

35.     Plaintiff brings this action on his own behalf and on behalf of a nationwide class (the "Class"), pursuant to 735 ILCS 5/2-801 defined as follows:

> The Class: All persons in the United States who, during the applicable statute of limitations period, subscribed to rentcafe.com and viewed video materials on the rentcafe.com website.

36.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

37.     Upon information and belief, there are hundreds of thousands of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's records.

38.     Plaintiff's claims are typical of the claims of the members of the Class Plaintiff seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's VPPA violations.

39.     There are many questions of law and fact common to the claims of Plaintiff and the other Class Members, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

(a)     Whether Defendant disclosed Class members' PII;

7

FILED DATE: 4/7/2025 1:33 PM   2025CH03939

(b)     Whether the information disclosed to third parties concerning Class Members PII constitutes personally identifiable information under the VPPA;

(c)     Whether Defendant knowingly disclosed the Class Members' PII to third-parties;

(d)     Whether Class members provided written informed consent to Defendant's disclosure of their PII to third parties as required by the VPPA;

(e)     Whether the Class is entitled to damages and other relief as a result of Defendant's conduct.

40.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

41.     Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

42.     Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I
### Violations of the Video Privacy Protection Act
### (On behalf of Plaintiff and the Class)

43. Plaintiff hereby incorporates the above allegations by reference as though fully set forth herein.

44. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" of any subscriber to their services to a third party without their "informed, written consent[.]" 18 U.S.C. § 2710.

45. As defined in 18 U.S.C. § 2710 (a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

46. As defined in 18 U.S.C. § 2710 (a)(3), "personally-identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

47. As defined in 18 U.S.C. § 2710 (a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider."

48. Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710 (a)(4) because it is provided prerecorded videos to Subscribers such as Plaintiff and the other Class members through its Website.

49. Plaintiff, like the other Class members, is a "consumer" under the VPPA as he is a Subscriber to Defendant's Website who viewed prerecorded videos on the Website.

50. Defendant knowingly caused Plaintiff's and the other Class members' PII, including information that can be used to identify them as having requested or obtained specific video materials or services, to be disclosed to third parties, including specifically to Facebook

9

FILED DATE: 4/7/2025 1:33 PM   2025CH03939

through its use of a Meta Pixel. This information constitutes PII under 18 U.S.C. § 2710 (a)(3) because it identified Plaintiff and the Class Members to third parties as individuals who viewed specific video materials requested from Defendant's Website.

51.     As set forth in 18 U.S.C. § 2710 (b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner."

52.     Defendant did not obtain informed, written consent from Plaintiff and the Class Members under the VPPA before disclosing their PII, including specifically their viewing history, to third parties.

53.     Defendant knew that these disclosures identified Plaintiff and the other Class Members to third parties. By knowingly and intentionally disclosing Plaintiff's and Class Members' PII without their written consent, Defendant violated Plaintiff's and Class Members' statutorily protected right to privacy under the VPPA.

54.     As a result of the above-mentioned violations, Defendant is liable to Plaintiff and the other Class Members for damages related to their loss of privacy in an amount to be determined at trial.

55.     On behalf of himself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as it is necessary to protect the interests of the Plaintiff and Class by requiring Defendant to comply with the VPPA; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710 (c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

10

FILED DATE: 4/7/2025 1:33 PM   2025CH03939

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for the following relief:

1.    An order certifying the Class as defined above;

2.    For all forms of relief set forth above

3.    An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;

4.    An award of attorney's fees and costs;

5.    Award such further relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

DATED: April 7, 2025                    Respectfully submitted,

BRAD BIXLER, individually and on behalf of similarly situated individuals

By: /s/ *Jordan R. Frysinger*
One of Plaintiff's Attorneys

Eugene Y. Turin
Jordan R. Frysinger
McGuire Law, P.C. (Firm ID 56618)
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
jfrysinger@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

11